GAETANO BRINDIZI, Appellant, *v.* LEHIGH VALLEY RAILROAD COMPANY and Another, Respondents.

Fourth Department, November 11, 1925.

Trial — new trial — newly-discovered evidence — action to recover for injuries suffered by plaintiff in accident at railroad crossing resulted in verdict in favor of plaintiff — close question whether certain warning bell was in operation — new trial should not be granted because one witness for plaintiff made affidavit for perjury and later recanted, and three others said they were mistaken — six other witnesses did not recant testimony — all statements were ex parte — on motion of this kind witnesses should be examined in open court.

In this action to recover damages for injuries suffered by the plaintiff in a railroad crossing accident which resulted favorably to the plaintiff, in which there was a close question of fact whether a certain warning bell was in operation, a new trial should not have been granted on the application of the defendant based on an *ex parte* affidavit by one of plaintiff's witnesses to the effect that he had been promised money for his testimony, which affidavit was later recanted, and on the unsworn statements made *ex parte* by three other witnesses, to the effect that in their testimony on the trial they were mistaken, one of which later recanted his statement, since it appears that six other witnesses to the same question did not recant their testimony and that all statements made by the four witnesses for the plaintiff were made *ex parte* to the investigators of the defendant.

The result of the attack on the verdict on the ground that it was obtained by perjured testimony is, in view of the unassailed testimony of six witnesses on the disputed question, so slight as to leave no taint on the verdict.

*It seems,* that a motion of this character should seldom, if ever, be decided on affidavits alone, but that there should ordinarily be an examination before the court or a referee with opportunity for cross-examination so that any possible misconduct may be either confirmed or disproved.

APPEAL by the plaintiff, Gaetano Brindizi, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Niagara on the 16th day of December, 1924, setting aside a judgment heretofore entered in this action in said clerk's office on the 9th day of January, 1924, upon the verdict of a jury for $7,000, and granting a new trial on the ground of newly-discovered evidence.

*Watts, Hunt & Findlay* [*Francis T. Findlay* of counsel], for the appellant.

*Kenefick, Cooke, Mitchell & Bass* [*Thomas R. Wheeler* of counsel], for the respondent Lehigh Valley Railroad Company.

*Rann, Vaughan, Brown & Sturtevant* [*Raymond C. Vaughan* of counsel], for the respondent New York Central Railroad Company.

CROUCH, J.:

The appeal is from an order setting aside a judgment for plaintiff and granting a new trial on the ground that the verdict was procured through perjured testimony.

Sugar street, in the city of Niagara Falls, running north and south, is intersected by Buffalo avenue, running east and west. Just north of Buffalo avenue and parallel with it, crossing Sugar street at grade, are two tracks of the New York Central railroad. Over these tracks are operated certain trains of the Lehigh Valley railroad. On the evening of May 18, 1923, plaintiff, driving a Ford car north on Sugar street, stopped south of the railroad tracks while a west-bound train passed. He then drove onto the tracks and was hit by an east-bound Lehigh Valley train. About a year prior to the accident, there had been erected at this crossing two automatic wigwag signals, one on the west side of Sugar street north of the tracks, and one on the southeast corner of Sugar street and Buffalo avenue. For convenience they will be referred to as the northwest and southeast signals. At the time they were erected there had been installed on the pole of the southeast signal an automatic warning bell. About two months before the collision here in question, that signal had been accidentally demolished. The work of re-erecting it was completed on the day of the collision, except perhaps for the electric connection. During the interval the automatic warning bell had been attached to a diamond-shaped crossing sign standing nearby.

26

Whether or not a warning bell had ever, prior to the accident, been attached to the northwest signal post became a sharply disputed question of fact on the trial.

The complaint charged that prior to the accident defendants had maintained at the Sugar street crossing *an* electric alarm bell, and that they were negligent for failing to give adequate warning and in " allowing the use of said crossing while *the* signal bell and warning were broken, defective and out of order."

No bill of particulars was demanded. Counsel for defendants had been instructed and understood that prior to the accident there had never been a bell on the northwest signal. On the other hand, plaintiff's counsel say that they were informed and understood that there had been two bells. Their theory was that the southeast bell was not operating at the time of the accident; that the bell which the witnesses testified to as ringing was the northwest bell and that the failure of plaintiff to hear and heed that was not, under the circumstances of the case, contributory negligence. On the other hand, it was the theory of the defendants that the southeast bell was not out of order and was operating because, admitting that one was ringing, it must have been the southeast bell, since it was the only one there.

On the afternoon of the first day of the trial counsel on both sides came to a clear understanding of the opposing theories. No claim of surprise nor any request for postponement was made. Both sides set out to procure additional witnesses on the disputed point and did so.

Defendants say that following the trial an investigation revealed the fact that there had never been a bell on the northwest signal pole. Thereupon certain railroad investigators came from New York, established headquarters in Buffalo and undertook to ascertain why plaintiff's witnesses should have testified to the contrary. This motion is based upon what they claim to have ascertained.

Ten witnesses had testified for plaintiff on the trial to facts which tended directly or by inference to show that there was a bell on the northwest signal pole and that it was the only one operating. From three of those witnesses the investigators obtained question and answer affidavits. One other answered questions but refused to sign and swear to the stenographer's transcript. Two others seem to have been approached by the investigators, but yielded no results. The other four seem not to have been investigated.

The affidavit of Robert Clark, a colored man, says that his testimony on the trial to the effect that the bell he heard was on the northwest side of the crossing was false; and was given on the

promise of plaintiff to pay him a large sum of money in the event of winning the law suit.

Several months after making that affidavit he made another in which he reasserted the truth of his testimony at the trial and recanted the statements in the first affidavit.

The unsigned and unverified statement above referred to was made by Lee Clark, a son of Robert. It says that if he testified on the trial that there were two bells at the crossing, he was mistaken. He later made an affidavit reasserting the truth of his testimony at the trial.

The other two affidavits procured by the investigators were made by Truman Van Amburgh and Harry Van Amburgh, father and son. Truman says positively that he was mistaken in his testimony about the bells. Harry says he was mistaken, but is very doubtful about it. There is no hint of perjury or subornation.

The learned judge at Special Term who heard the motion did not preside at the trial. We have less hesitation, therefore, in interfering with a matter of discretion. We think the order must be reversed and the judgment reinstated. In the brief opinion handed down below, it was said that the verdict was " based on testimony which is admittedly false, and with a strong indication that it was planned to bring about the result." The testimony upon which the verdict is based is far from being admittedly false, and there is no proof worthy of belief to indicate any plan.

It is clear that Robert Clark is unworthy of belief. Like so many of his race who grew up under the conditions to which he himself refers, he is on a mental parity with a child. And " whatever we are to expect at the hands of children, it should not be any peddling exactitude about matters of fact." If, however, choice is to be made between his conflicting statements, that one which was given in open court, under the sanction of an oath and tested by cross-examination should more likely be true than the one made in a hotel room, *ex parte* and after he had long been beset by defendants' investigators.

The son, Lee Clark, seems to have been quite as unmoral as his father, but shrewder.

The statements of the two Van Amburghs are not very convincing. And that is so without regard to the fact that the older man, just prior to making his recantation, had been again given employment by the railroad company for which he had formerly worked. It is apparent that their changed view was due to arguments and evidence put before them by the investigators — again *ex parte*.

The net result of this attack taken in connection with the

unassailed testimony of six other witnesses on the disputed point is so slight as to leave no taint on the verdict.

It may be well to. add that a motion of this character should ·seldom if ever be decided on affidavits alone. There should ordinarily be a *viva voce* examination before the court or a referee, with opportunity for cross-examination, so that any possible idea of misconduct might be either confirmed or completely dispelled. (*Misiaszek* v. *Roberts*, 211 App'. Div. 417, 420.)

The order should be reversed, with costs, the judgment reinstated and the motion denied, with costs.

HUBBS, P. J., CLARK and SEARS, JJ., concur.

Order reversed, with costs, judgment reinstated, and motion denied, with costs.